if on», J.
John Mason By will dated tho Od of May 1799,, but not proved till tho 5th of October following, devised as follows s “ I give and deviso the plantation whercou I now live to my son Aaroa Mason and ills male heirs, lawfully issuing -aud for vas?, of such heirs, 1 give tho same to say son Barnl Mason and hh male heirs, lawfully l-.rjng 5 and for want of such heirs,, I give she same io my son John Mason, and his male *40 heirs, lawfully issuing; and for want of such heirs, to return back,” &e. On the death of the testator, Aaron, the first named devisee, entered, and died seized without any issue. Barnt Mason, the second devisee then entered and became-seized, but died ultimately out of possession, and this action is brought by Lewis Mason bis eldest son.
3t is argued tliat the devise “ to Barnt Mason and his male heirs,” did not create an estate tail under the statute de donis 13 Ed. 1. because that and all other English statutes had been publicly abolished by law on the 13th June 1799; which date., though after the making of the will, was nevertheless prior to the death of the testator; and from the ambulatory nature of wills they never take effect till death ; at which lime, in this case, there was in existence no law for upholding this kind of estate;-as estates in tail were entirely by force of the statute dr. donis. Now that it is so, there can be no doubt, in England. But it must be remembered that we had a statute of our own passed in 1784. Pat. 54, sec. 2. That was in existence fifteen years before the abolition of the British statutes, and that remained in force more than twenty years afterward. This statute adopts the great principle of the statute de donis, and supplies its place, as far as the legislature wished that great principle to remain. Beside acting retrospectively, on estates prior to 1784, it was made-to operate prospectively, also, by its very words : “ on all suck devises which shall hereafter be made in tail of any kindthus preserving a future power-of making these known estates under the restrictions and limitations in the same act. It is an absurdity that a regulation for future estates, should be preserved for twenty years after the abolition, if no such future estates could bu created. These estates could be as well made under our own actas under the statute of Edward; they both rested on the same great principle, that the will of the donor should he observed; and in abolishing the English statute there was no in - tent to abolish the estates likewise; the principle of them, being very valuable to a certain extent, and to that extent the le gislature meant to support them. An entire abolition, leaving them to be estates on condition at the common law, would have enabled a devisee, the moment he had issue, to alienate in fee simple, squander the money, and impoverish not himself, only, but a helpless family, that were objects of the provision, To en~ *41 able parents and others to prevent foreseen prodigality, arising from weakness of intellect, or evil propensities, the legislature, by the act of 1784, intended these estates should be preserved undes' the regulation therein mentioned. They allowed to the devisee an estate for life, hut vested the fee simple in the first, 'heir who should take by descent. This Lewis Mason was the first heir faking by descents, and, therefore, on these facts, is entitled to judgment.
Drake, J.
1 am of opinion that the language used by the testator under the operation of the statute de donis, created á contingent remainder in male tail, in Barret Mason, which became vested by the death of Aaron Mason without issue; and Lewis Mason being the second devisee in tail, or the first who hath taken in the line of descent, or of entailment, is accord" ing to the case of Den v. Fogg, Pennington’s Reports 819, seized of an estate in fee simple, in the premises.
In opposition to this, the counsel for the defendants says ; that before the death of the testator, and before any estate was created by the said will, the Legislature of this state indirectly abolished estates in fee tail, by enacting that no statute of Great; Britain should thereafter have any force in New-Jersey ; and as we have no statute de donis, and the act of 1784, and the supplement of 1788, do not create or establish, but merely limit an estate, which existed through the operation of a British statute, no such estate can now exist. I am not aware that this point has been decided in our courts, nor do I conceive it necessary to decide it now. For if this be not an estate tail, it is, according to the admission of all parties, a conditional fee at she common law, and if so, what is to prevent the plaintiff’s rc covery ? It is answered, that if it he a conditional fee, then up on the birth of issue, the condition was performed, and the estáte became absolute, so far as to permit the tenant to alien, This is, no doubt tree. But did ho alien f there is no proof of this. The defendants are found in quiet possession; and, therefore, say their counsel, a conveyance to them is to he presumed, But no such presumption can bo legally founded on that fact, alone. The result is, that without determining whether this be an estate tail, I consider the plaintiff entitled to judgment.
Judgment for plaintiff